# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RANDALL H. MIERZEJEWSKI,<br>   Plaintiff,<br><br>v.<br><br>HON. ANDREW L. MANDELL, et al.,<br>   Defendants. | **CIVIL ACTION<br>NO. 14-40004-DHH** |

## MEMORANDUM AND ORDER

### March 24 , 2014

Hennessy, M.J.

  For the reasons set forth below, Plaintiff's motions for leave to proceed *in forma pauperis* are granted; Plaintiff is assessed an obligation to make payments towards the $350.00 filing fee; Plaintiff's motion for appointment of counsel is denied; and, within 42 days of the date of this Memorandum and Order, Plaintiff shall show cause why this action should not be dismissed for the reasons stated below.

 **I**  **Background**

  On January 13, 2014, Plaintiff Randall H. Mierzejewski ("Mierzejewski"), an inmate at the Worcester County House of Correction ("WCHC"), filed his twenty-five page, handwritten pro se complaint.[1]  See Docket No. 2.  Named as defendants are the Worcester County House of Correction, the Worcester County Sheriff, two state court judges, and two prosecutors.  Id.  Plaintiff filed a motion for appointment of counsel and two motions for leave to proceed *in forma pauperis*.  See Docket No2. 3-4, 7.

---

[1] Plaintiff was briefly released and then returned to WCHC.  See Docket Nos. 8, 11.

The crux of Mierzejewski's claims involve the alleged failure of the defendants to provide Mierzejewski with a speedy trial after his 2003 arraignment for breaking and entering. After his arraignment, Mierzejewski traveled to Florida and, after he failed to appear for a July 31, 2003 hearing, a warrant issued. While in Florida, Mierzejewski was subsequently arrested in a separate case, convicted and sentenced. He completed his Florida sentence in 2006 and returned to Massachusetts, where he was arrested on the default warrant.

Mierzejewski complains that while he was serving his Florida sentence from 2003-2006, the defendants never issued a detainer for his extradition. He subsequently filed several motions for new trial and/or to withdraw plea, but Judges Mandell and Zide denied his motions. Mierzejewski alleges that Judges Mandell and Zide breached their duty to exercise due diligence, see Complaint, ¶ 14, and that Judge Zide subsequently apologized to him "for violating his constitutional rights." Id. at ¶ 12. Mierzejewski alleges that the Worcester County District Attorney, and an unnamed assistant district attorney, breached their duty to exercise due diligence. Id. at ¶ 13.

Mierzejewski brings this action under the federal civil rights statute, 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12182(a), 12101(a), and several state laws. In a conclusory fashion, Plaintiff complains that the defendants were biased and prejudiced, negligent and subjected him to discrimination. Compl., ¶¶ 49, 51, 52. For relief, he seeks, among other things, monetary damages, appointment of counsel, a criminal investigation of the defendants, and dismissal of his conviction for 2006 "walk-away" escape. Complaint, ¶¶ 16, 80.

## II The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Plaintiff's financial disclosures and transaction report indicating that he has no substantial assets, this Court finds that he has demonstrated sufficiently that he lacks funds to pay the filing fee. Because Mierzejewski is a prisoner, he is obligated to make payments toward the $350.00 filing fee, pursuant to the Prison Litigation Reform Act. See 28 U.S.C. § 1915 (the *in forma pauperis* statute). He will be assessed an obligation to make monthly payments of 20 percent of the preceding month's income credited to his account until the statutory filing fee has been paid in full. See 28 U.S.C. § 1915(b)(2).

## III. The Court May Screen The Complaint

The Prison Litigation Reform Act ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996) includes several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(ii) and (iii). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under section 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. Neitzke, 490 U.S. at 327-328; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Section 1915A authorizes the Court to review prisoner complaints in civil actions in

which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In conducting the preliminary screening, Mierzejewski's *pro se* complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educ, Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000). However, even under a generous reading, this action is subject to dismissal for the reasons set forth below.

**IV      Challenge to State Court Convictions**

To the extent Mierzejewski seeks federal court review of one, or more, of his state convictions, such review should be sought through the filing of a petition for writ of habeas corpus. Relief by way of a writ of habeas corpus extends to a person in custody if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A state prisoner's federal remedy for challenging the constitutional validity of his custody is a petition for writ of habeas corpus under § 2254 or § 2241, either of which can be sought only after a petitioner has exhausted state court remedies with regard to the conviction and sentence. See 28 U.S.C. § 2254(b); Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490–91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (exhaustion also required under 28 U.S.C. § 2241). In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court reiterated that release from custody is not a remedy available under 42 U.S.C. § 1983. "Habeas corpus is the exclusive remedy for a

4

state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck, 512 U.S. at 481.

Mierzejewski alleges that his federal habeas petition was dismissed for failure to exhaust state remedies. Complaint, ¶ 48; Mierzejewski v. Glodis, C.A. No. 07-40273-FDS (dismissed Apr. 7, 2008). However, he cannot, in this civil complaint, seek habeas relief.

Moreover, to the extent Mierzejewski's seeks federal review of any final decision of a state court, this Court lacks subject matter jurisdiction to conduct such review, pursuant to the Rooker-Feldman doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision. See Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994).

Similarly, if the state litigation has not reached a final disposition and is pending, this Court should not interfere with any pending state court litigation. Rather, this Court should abstain from judicial review of the pending case. The federal courts have long recognized the "fundamental policy against federal interference with state criminal proceedings." Younger v. Harris, 401 U.S. 37, 46 (1971); In re Justices of the Superior Court Dept. of the Massachusetts Trial Court, 218 F.3d 11, 16 (1st Cir. 2000).

Here, this Court is without jurisdiction over Mierzejewski's request for this Court to review the state proceedings referenced in the complaint .

**V.      Federal Court not Authorized to Compel Criminal Investigations**

5

To the extent Plaintiff seeks to have the Justice Department investigate "the case-in-chief against the Defendants, and be criminally charged for civil rights violations," Compl., at ¶ 84, such relief cannot be granted in this action. Under the U.S. Constitution, it is the Executive Branch of the federal government, and not the Judicial Branch, that is responsible for conducting criminal investigations, and bringing criminal charges, if warranted. The Constitution precludes the federal courts from interfering in these responsibilities of the Executive Branch. See United States v. Nixon, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); United States v. Smith, 231 F.3d 800, 807 (11th Cir.2000) ("The decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced."), cert. denied, 532 U.S. 1019 (2001).

Additionally, private citizens lack a judicially cognizable interest in the prosecution or non-prosecution of another. See, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); accord Nieves-Ramos v. Gonzalez, 737 F. Supp. 727, 728 (D. P.R. 1990) (same).

**VI  The Complaint Fails to State a Claim Under the Americans With Disabilities Act**

To the extent plaintiff brings this action pursuant to the Americans With Disabilities Act of 1990 ("ADA"), his claims are subject to dismissal. Plaintiff alleges that he was subjected "to Discriminatory Intent, and Discriminatory Effect [by the defendants] based upon his criminal history, being an Institutionalized Person, and for his being Disabled American With Disabilities." Compl., ¶ 52.

Title II prohibits discrimination by a "public entity" and Title III prohibits discrimination in "public accommodations." 42 U.S.C. §§ 12132, 12182. Title II of the ADA prohibits discrimination against persons with disabilities by "public entities" which includes a state's correctional facilities. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998). In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

To state a plausible ADA claim, a plaintiff must demonstrate: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000).

Here, Plaintiff simply complains in a conclusory fashion that he has been subjected to discrimination. The allegations in the complaint fail to demonstrate that he is a qualified individual with a disability, that he was discriminated against and that such discrimination was because of a disability. Thus, the ADA claims are subject to dismissal.

**VII     The Complaint Fails to State a Claim Under the Civil Rights Act, 42 U.S.C. § 1983**

A.     The Worcester County House of Correction is Not a Suable Entity

Mierzejewski names the Worcester County House of Correction as a defendant. However, WCHC is a building, and is not an entity that can be sued as a "person" under Section 1983.  See, e.g., De La Garza v. Kandiyohi County Jail, No. 01-1966, 18 Fed. Appx. 436, 437  (8th Cir. 2001) (per curiam) (county jail not a suable entity); Mardsen v. Federal Bureau of Prisons, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) .  Thus, the claims against the WCHC are subject to dismissal.

B.     Sovereign Immunity Bars Official Capacity Claims for
Monetary Damages Based on Violations of 42 U.S.C. § 1983

Mierzejewski's claims against the sheriff, prosecutors and judges in their official capacity based on alleged constitutional violations and raised pursuant to 42 U.S.C. § 1983 are barred by the Eleventh Amendment of the United States Constitution.  This amendment [2] generally is recognized as a bar to suits in federal courts against a State, its departments and its agencies, unless the State has consented to suit or Congress has overridden the State's immunity.  See Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (*per curiam*); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st Cir. 2007).  The Eleventh Amendment also precludes federal courts from hearing state claims brought against state officials in their official capacities.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89,

---

[2]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.

101-02 (1984); J.R. v. Gloria, 593 F.3d 73, 82 (1st Cir. 2010). See Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir.2009); Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action.").

Here, Mierzejewski presents no circumstances from which a waiver of sovereign immunity may be inferred as to his § 1983 claims. Accordingly, his claims against the defendants in their official capacity for monetary damages are subject to dismissal.

C. Prosecutorial Immunity

Plaintiff claims that he is entitled to damages from the Worcester County District Attorney and an unidentified Assistant District Attorney. Plaintiff's claims are barred by the doctrine of absolute prosecutorial immunity. A district attorney and his assistants are absolutely immune in a civil rights suit for any action taken pursuant to their role as prosecutors in preparing for the initiation of judicial proceedings and in presenting the State's case. See Kalina v. Fletcher, 522 U.S. 118, 129, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); Imbler v. Pachtman, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Plaintiff's claims are based on their conduct as the State's advocates and they are thus entitled to absolute prosecutorial immunity. See Imbler, 424 U.S. at 430 (absolute immunity protected prosecutor from suit for knowingly using perjured testimony and suppressing material evidence at plaintiff's murder trial); Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir.2013) ( "The protection afforded by an absolute immunity endures even if the official acted maliciously and corruptly in exercising his judicial or prosecutorial functions." (internal quotation marks omitted)).

Thus, Plaintiff's complaint fails to state a claim for damages against the Worcester County District Attorney and an Assistant District Attorney, and such claims are subject to dismissal since these defendants are absolutely immune.

D.      Judicial Immunity

Mierzejewski's claims against Judges Mandell and Zide are not legally cognizable because absolute judicial immunity protects a judge from acts performed within the scope of his/her jurisdiction. Mireles v. Waco, 502 U.S. 9, 11 (1991) (*per curiam*) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damage."); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (absolute judicial immunity protects integrity of judicial process); Allard v. Estes, 197 N.E. 884, 886 (1935) (stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law."). "'Absolute judicial immunity protects judges from 'civil liability for any normal and routine judicial act,' except those taken in the 'clear absence of all jurisdiction.'" Goldblatt v. Geiger, No. 10–cv–537–PB, 2011 WL 1362119 (D.N.H. 2011) quoting Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir.1989) (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)).

Here, although Mierzejewski may believe that Judges Mandell and Zide erred in their rulings, there is no basis for concluding that the actions or inactions of these judges were taken outside the scope of their jurisdiction. See Ricciuti v. Alander, No. 3:03CV708(CFD), 2004 WL 555235, *2 (D. Conn. 2004) ("Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and were (3) centered

10

around a case pending before a judge.").

Thus, Plaintiff's complaint fails to state a claim for damages against Judges Mandell and Zide, and such claims are subject to dismissal since these defendants are absolutely immune.

### E. Claims Against Sheriff Evangelidis

Plaintiff alleges that in 2006, he was sentenced to serve a probation violation at the Worcester County House of Correction, in the custody of Sheriff Evangelidis, successor to former Sheriff Glodis. Compl., ¶¶ 9, 15, 49. Plaintiff alleges that the Sheriff, along with the other defendants, subjected him to vindictive treatment and discrimination. Id. at ¶¶ 50, 52.

Although Sheriff Evangelidis is identified as a defendant, Plaintiff has not identified any specific wrongdoing or provided specific factual allegations against the Sheriff. Section 1983 requires allegations of personal involvement in the alleged constitutional deprivation as a prerequisite to recovery. See McKinnon v. Patterson, 568 F.2d 930, 934 (2nd Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978) and Kostka v. Hogg, 560 F.2d 37, 40 (1st Cir. 1977). "[Section] 1983 does not impose purely supervisory liability; it aims at persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable." Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007) (internal quotation marks and citations omitted).

Because the complaint fails to identify any specific wrongdoing on the part of Sheriff Evangelidis, the claims against the Sheriff are subject to dismissal for failure to state a claim upon which relief may be granted.

## VIII   Order to Show Cause

In light of all of the above, this action shall be dismissed within 42 days of the date of this Memorandum and Order unless Mierzejewski demonstrates good cause in writing why this action should not be dismissed.  Mierzejewski shall provide legal support for his arguments, and his show cause response shall not exceed ten (10) double-spaced pages.  Failure to comply with this directive will result in a dismissal of this action.

## IX.   Plaintiff's Motion for Appointment of Counsel

Under 28 U.S.C. § 1915, a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  The United States Court of Appeals for the First Circuit provides the following set of factors to consider when determining whether to appoint counsel to an indigent litigant under § 1915: "[1] the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim; [2] the complexity of the factual and legal issues involved; and [3] the capability of the indigent litigant to present the case." Cookish v. Cunningham, 787 F.2d 1, 3 (1st Cir. 1986) (*per curiam*); see Bemis v. Kelley, 857 F.2d 14, 16 (1st Cir. 1988).  Ultimately, to be eligible for this assistance under 28 U.S.C. § 1915, Mierzejewski "must demonstrate that [he is] indigent and that exceptional circumstances [are] present such that a denial of counsel [is] likely to result in fundamental unfairness impinging on his due process rights." DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  This Court considers the total situation, including the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. Id.   Where this case is subject to dismissal in its entirety based on the legal impediments discussed above,

this Court cannot find that exceptional circumstances exist that warrant the expenditure of scarce *pro bono* resources. Thus, the motion for appointment of counsel will be denied.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motions to Proceed *in forma pauperis* (Docket Nos. 3, 7) are <u>ALLOWED</u>;

2. Plaintiff is assessed an obligation to make payments towards the $350.00 filing fee in accordance with 28 U.S.C. § 1915(b)(2);

3. Plaintiff's Motion for Appointment of Counsel (Docket No. 4) is <u>DENIED</u>;

4. This action shall be <u>DISMISSED</u> within 42 days of the date of this Memorandum and Order for the reasons stated herein unless Plaintiff demonstrates good cause in writing why this action should not be dismissed. Failure to comply with the directives contained in this Memorandum and Order will result in a dismissal of this action;[3] and

5. No summons shall issue pending further order of the Court.

So ordered.

          /S/ David H. Hennessy

          David H. Hennessy
          UNITED STATES MAGISTRATE JUDGE

---

[3]This action was assigned pursuant to the Court's Program for Random Assignment of Civil Cases to Magistrate Judges. Upon receipt of Plaintiff's response to this Memorandum and Order, the undersigned will either direct the Clerk to issue summons or direct the reassignment of the case to a District Judge for further review of Plaintiff's response.